

SIGNED THIS 26th day of August, 2024

THIS MEMORANDUM OPINION HAS BEEN ENTERED ON THE DOCKET. PLEASE SEE DOCKET FOR ENTRY DATE.

_____
Paul M. Black
UNITED STATES BANKRUPTCY JUDGE

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | **CHAPTER 7** |
| JOSHUA ANDREW ARNOLD ) | |
| SARAH LYNN COCHRAN ) | |
| ) | **CASE NO. 22-70561** |
| **Debtors.** ) | |

## MEMORANDUM OPINION

This matter comes before the Court on a Motion for Imposition of Sanctions filed by the male Debtor, Joshua A. Arnold (the "Debtor"), by counsel, against the respondent, Pace Financial ("Pace"). A hearing was held on the Motion on August 1, 2024, at which Debtor's counsel and the Debtor appeared and the Debtor gave testimony. Pace neither appeared nor filed a response. At the end of the hearing, the Court took the matter under advisement and provided Debtor's counsel with an opportunity to file a brief supporting the Motion by August 16, 2024. Upon review of the Debtor's filings, the arguments advanced at the hearing, and the reasons stated below, the Court will deny the Debtor's Motion.

## STATEMENT OF THE CASE

The Debtor and his wife filed for bankruptcy under Chapter 7 on October 3, 2022, and included in their petition a Statement of Intention for Individuals Filing Under Chapter 7. In this Statement, the Debtors indicated that for a debt owed by the male Debtor to Pace secured by a 2010 Acura MDX (the "Acura"), the Debtors will "retain collateral and maintain payments." ECF No. 1, Official Form 108 at 1. The Debtors did not claim the Acura as exempt on Schedule C, nor did they express an intent to either enter into a reaffirmation agreement with Pace or redeem the Acura. The Debtors received a discharge on January 10, 2023, and the Court closed the case that day.

Upon correspondence from the Debtor, *pro se*, on May 31, 2024, alleging violations of the "protection act of the bankruptcy law" by Pace, the Court reopened the case on June 4, 2024. ECF Nos. 20, 21. The instant Motion was filed by the Debtor with counsel on July 3, 2024, alleging that Pace violated the automatic stay and discharge injunction by making 50 or more collection calls to the male Debtor and his family members. *See* ECF No. 23.

At the hearing, the Debtor played a voicemail from a representative of Pace that advised his monthly payment on the Acura was late, there was no grace period, and management was reviewing his account for further action. The Debtor acknowledged that when Pace's representative left this voicemail, his payment to Pace was in fact late, although he testified that on other occasions Pace's representatives called him on the day his payment was due to ask him whether he would make his payment or needed to work out an alternate arrangement. The Debtor further stated he was presently current on his payments to Pace. The Debtor also testified that Pace's representatives called his wife and sister-in-law asking to get in contact with the Debtor

2

about his account. Other than the cost of attorney's fees to file and pursue the Motion, the Debtor put on no evidence of damages.

## JURISDICTION

This Court has jurisdiction of this matter by virtue of the provisions of 28 U.S.C. §§ 1334(a) and 157(a), the referral made to this Court by Order from the District Court on December 6, 1994, and Rule 3(a) of the Local Rules of the United States District Court for the Western District of Virginia. This matter is a "core" bankruptcy proceeding within the meaning of 28 U.S.C. §§ 157(b)(1) and (2)(O).

## CONCLUSIONS OF LAW

*I. The Automatic Stay Terminated under 11 U.S.C. § 362(h)(1) for the Acura Because the Debtors Failed to Redeem the Debt Secured by the Acura or Enter into a Reaffirmation Agreement for It Within 30 Days of Their § 341(a) Meeting of Creditors.*

Under § 362(c)(1), the automatic stay of § 362(a), which goes into effect upon the filing of a case, continues to stay acts against property of the estate until the time that such property is no longer property of the estate, subject to §§ 362(d), (e), (f), and (h). 11 U.S.C. § 362(c)(1). Under 11 U.S.C. § 362(h)(1), the automatic stay is terminated as to personal property of the estate securing a claim if an individual debtor fails within the time set by 11 U.S.C. § 521(a)(2) to: "[(1)] file timely any statement of intention required under section 521(a)(2) with respect to such personal property or [(2)] to indicate in such statement that the debtor will either surrender such personal property or retain it **and, if retaining such personal property, either redeem such personal property pursuant to section 722 [or] enter into [a reaffirmation] agreement . . . specified in section 524(c) applicable to the debt secured by such personal property**. . ." as well as "take timely the action specified in such statement." 11 U.S.C. § 362(h) (emphasis added).

3

Under 11 U.S.C. § 521(a)(2), within 30 days of filing the petition, an individual Chapter 7 debtor must file a statement of intent for secured claims secured by property of the estate that indicates the debtor's intent to surrender or retain the collateral, and if retaining the collateral, whether the debtor claims the collateral as exempt, intends to redeem it, or intends to reaffirm the debt secured by the collateral as well as perform this stated intention within 30 days after the first day set for the § 341(a) meeting of creditors. 11 U.S.C. § 521(a)(2). Section 521(a)(2) further states that "nothing in subparagraphs (A) and (B) of this paragraph shall alter the debtor's or the trustee's rights with regard to such property under this title, except as provided in section 362(h)." *Id.* This provision was added by the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA"), along with § 362(h). *DaimlerChrysler Fin. Servs. Am., LLC v. Jones (In re Jones)*, 591 F.3d 308, 311 (4th Cir. 2010).

The Fourth Circuit in *Jones* determined that § 362(h) makes redemption under 11 U.S.C. § 722 or reaffirmation agreements under 11 U.S.C. § 524(c) the exclusive options for Chapter 7 debtors wanting to retain this property and have it remain protected by the automatic stay. 591 F.3d at 311-12.[1] Nevertheless, a debtor who does all he can to comply with § 362(h)(1) and § 524(c) by executing a reaffirmation agreement that the bankruptcy court refuses to approve may still be able to argue that, under the "back door ride-through" doctrine expressed in some courts in the Fourth Circuit, he still complied with § 362(h)(1) and § 521(a)(2) and the automatic stay was not terminated for the collateral the debtor attempted to reaffirm. *See In re Husain*, 364 B.R.

---

[1] In doing so, the Fourth Circuit found that the "ride-through-option" it expressed in *In re Belanger*, 962 F.2d 345, 347-48 (4th Cir. 1992), was displaced by BAPCPA. *Id.* Before § 362(h) was added and § 521(a) was amended by BAPCPA, the Fourth Circuit in *Belanger* found that interpretations of § 521(a)(2) could support an additional option for debtors under § 521(a)(2) of stating in their statement of intent that they intended to retain the personal property at issue and make payments on the debt but not enter into a reaffirmation agreement or redeem the property. *See Belanger*, 962 F.2d at 347-48.

4

211, 218-20 (Bankr. E.D. Va. 2007); *Coastal Fed. Credit Union v. Hardiman*, 398 B.R. 161, 181-83, 184-87 (E.D.N.C. 2008).

Here, with facts similar to those in *Jones*,[2] the Debtors failed to redeem the collateral or enter into a reaffirmation agreement, much less perform those intentions. Thus, the automatic stay terminated for the Acura under § 362(h)(1) and, provided the Debtor was in default under its contract with Pace, Pace had the right to enforce its security interest in the Acura and secure possession of it. Furthermore, because the Debtors never attempted to obtain a reaffirmation agreement, the Debtor cannot take advantage of the "back door ride-through" doctrine either.[3] However, based on the evidence presented at the hearing on August 1, the timing of the creditor's action in this case is more appropriately governed by the discharge injunction than the automatic stay, as discussed further below.

*II. The Debtor Failed to Meet His Burden of Proof That Pace Violated the Discharge Injunction.*

A debtor's desire to pursue a violation of the discharge injunction is an appropriate reason to reopen a closed bankruptcy case, in that 11 U.S.C. § 524(a)(2) provides that a discharge operates as an injunction against efforts to collect debt as a personal liability of the debtor. However, there is an important caveat to the discharge injunction. There is little to prevent a creditor from proceeding *in rem* against the debtor's property when such property secures a pre-petition debt. *Thompson v. Board of Trustees of the Fairfax Cnty. Police Officers*

---

[2] In *Jones*, the debtor executed a statement of intention for a vehicle subject to a purchase money security interest held by DaimlerChrysler by a Retail Installment Contract. 591 F.3d at 309. The debtor indicated he would "Continue Payments" on the vehicle but did not indicate that he wanted to enter into a reaffirmation agreement or redeem the vehicle. *Id.* He also did not enter into a reaffirmation agreement or redeem the vehicle within the proper timeframe after the date the first meeting of creditors was set. *Id.* at 310.

[3] In *Jones*, the Fourth Circuit noted "[b]ecause Mr. Jones did not take any action to reaffirm or redeem, we have no occasion to address the 'back door ride-through' option that some courts have recognized where the debtor has substantially complied with §§ 521(a)(2) and 362(h) but has been frustrated in his effort to fully comply." *Jones*, 591 F.3d at 312 n.3 (citations omitted).

*Ret. System (In re Thompson)*, 182 B.R. 140, 154 (Bankr. E.D. Va. 1995). See *In re Taylor*, No. 09-72532, 2021 WL 3083651, at *3 (Bankr. W.D. Va. July 21, 2021).  As stated in *Thompson*,

> A discharge affects a debtor's liability *in personam.* It "operates to permanently stay any attempt to hold the debtor personally liable for discharged debts." *River Place East Housing Corp. v. Rosenfeld (In re Rosenfeld),* 23 F.3d 833, 836 (4th Cir.), *cert. denied,* 513 U.S. 874, 115 S.Ct. 200, 130 L.Ed.2d 131 (1994). Unless a security interest or lien is avoided, a discharge has little, if any, impact on a creditor's ability to proceed *in rem* against the property securing the claim. *See Johnson v. Home State Bank,* 501 U.S. 78, 82–83, 111 S.Ct. 2150, 2153, 115 L.Ed.2d 66 (1991) ("[The Bankruptcy] Code provides that a creditor's right to foreclose on the mortgage survives or passes through the bankruptcy."); *Farrey v. Sanderfoot,* 500 U.S. 291, 297, 111 S.Ct. 1825, 1829, 114 L.Ed.2d 337 (1991) ("Ordinarily, liens and other secured interests survive bankruptcy.").

*Thompson*, 182 B.R. at 154, *subsequently aff'd*, 92 F.3d 1182 (4th Cir. 1996); *Taylor*, 2021 WL 3083651, at *3.

The discharge injunction in section 524(a) lacks the statutory enforcement mechanism found in 11 U.S.C. § 362(k). Thus, a bankruptcy court may rely on the broader doctrine of civil contempt through its equitable power under section 105(a) to give effect to a debtor's discharge. *In re Skaggs*, 644 B.R. 149, 155 (Bankr. W.D. Va. 2022). In turn, *Taggart v. Lorenzen*, 587 U.S. 554, 559–60 (2019), sets the legal standard for holding a creditor in contempt when the creditor attempts to collect a debt in violation of a bankruptcy discharge order. *Taggart* observed that

> [t]wo Bankruptcy Code provisions aid our efforts to find an answer. The first, section 524, says that a discharge order "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset" a discharged debt. 11 U.S.C. § 524(a)(2). The second, section 105, authorizes a court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

*Taggart*, 587 U.S. at 559–60. Here, the standard set by *Taggart* is that a "court may hold a creditor in civil contempt for violating a discharge order where there is not a 'fair ground of doubt' as to whether the creditor's conduct might be lawful under the discharge order. In our view, that standard strikes the 'careful balance between the interests of creditors and debtors'

6

that the Bankruptcy Code often seeks to achieve. *Clark v. Rameker*, 573 U.S. 122, 129, 134 S.Ct. 2242, 189 L.Ed.2d 157 (2014)." *Taggart*, 587 U.S. at 565. Following *Taggart*'s lead, and that of Judge Connelly in *Skaggs*, the Debtor asks the Court to "sanction [Pace] for actions taken in violation of the stay and discharge," which the Court interprets as a request for contempt sanctions under § 105(a).

Is there no fair ground of doubt that Pace's conduct violated the discharge injunction? The Court believes that the Debtor has not shown that the standard is met in this case. Since secured claims not avoided during bankruptcy survive the discharge injunction, if the Debtor defaulted under the terms of the agreement he had with Pace, Pace could seek to enforce its rights and repossess the Acura without violating the discharge injunction. *See Hegedus v. U.S. Bank Nat'l Ass'n (In re Hegedus)*, No. 19-50855, 2023 WL 2051897, at *9 (Bankr. W.D. Va. Feb. 15, 2023).

At most, the Debtor's testimony indicates that the Debtor was contacted about his account when the payments were due or late, and that Pace told the Debtor his account was being reviewed for "further action" when his payment was late. "Further action" is close to the flame, but it could legitimately mean repossession in the event of payment default. There is no doubt based on the Debtor's testimony that he wants to retain possession of the Acura and to pay for it. There is no persuasive evidence that Pace's communications to the Debtor or to his family were for the purpose of coercing the Debtor to make a payment he did not want to make. The Debtor fails to show the Court that any of these actions were Pace's attempts to collect this debt from the Debtor as personal liability of the Debtor, as opposed to seeing if the Debtor wants to perform under his contract to stave off repossession of the Acura. Continuing to hold onto the Acura and make the payments on it is exactly what the Debtor put in his Statement of Intention filed in his

7

schedules. One would think a debtor would want to know that a repossession is imminent if a payment is missed, and the opportunity exists to prevent that. By his own admission, the Debtor was past due on the Acura when the recording from Pace was played in open court, and other times they called him on his due date when the monthly payment had not yet been received. *See In re Hegedus*, 2023 WL 2051897, at *12 (the evidence before the Court does "not suffice to demonstrate the calls were actions to collect a debt as a personal liability of the plaintiffs, or in other words, do not suffice to demonstrate a violation of the discharge injunction.").[4]

## CONCLUSION

For the reasons articulated above, the Debtor's Motion for Imposition of Sanctions is denied. A separate order will follow.

---

[4] A word of caution to Pace going forward. There comes a point where the sheer volume of calls tips a legitimate inquiry as to intent into coercive behavior. Pace should be mindful that repeated calls to the Debtor and his family members, even just trying to get in touch with him, may be construed as pressure to collect a discharged debt and as a discharge violation. *See In re Perviz*, 302 B.R. 357, 366 (Bankr. N.D. Ohio 2003)("….it is simply inconceivable that those phone calls and correspondences initiated by [the creditor] and its legal representative were, in the aggregate, anything but an attempt to collect on a prepetition debt owed by the Debtors.")